JENKINS *v.* STATE.

In Banc. Oct. 10, 1949.

No. 37204 (42.So. (2d) 198)

Claude **F. Clayton,** for appellant.

**R. O. Arrington,** Assistant Attorney General, for appellee.

286

**Roberds, J.**

Jenkins was convicted of the unlawful possession of intoxicating liquor, second offense. Section 2613 (b), Miss. Code 1942. On this appeal he argues four errors which he contends were committed in the trial of the case. We deem it necessary to discuss and decide only three of these. He requested, and was refused, a peremptory instruction as to the guilt of accused. He says the testimony is insufficient to prove he had possession of the liquor. This requires a summary of the evidence. The State introduced five witnesses. Defendant offered no testimony. One witness for the State was the circuit clerk, who proved the former conviction. The other four consisted of the sheriff and two of his deputies, and a policeman of the City of Tupelo. As bearing upon whether appellant did, or did not, have possession of the whiskey, the evidence of these four officers justified the finding by the jury of the following facts:

Appellant, his wife and child, occupied as a home, a residence in the City of Tupelo. The officers found in the

top of a hot water tank located in the garage, used in connection with the residence, fourteen pints of whiskey. The physical facts surrounding the premises were these: the residence faces east upon a street. Running from this street to the garage, parallel with, and just south of the residence, was a concrete driveway. The witnesses did not agree on the exact distance from the rear, or southwest corner, of the residence to the garage. One said it was thirty feet; another estimated the distance to be twenty to thirty steps. It was a double garage; defendant had two automobiles. So far as this record discloses, he was the only person using the lower part of the garage, in which part of the hot water tank was located. On the south line, running east and west, of the lot on which the house and garage are located, a rock fence had been constructed some thirty inches high, separating this lot from the one on the south. But appellant ably argues two specific points as bearing upon the question being considered.

He says, First, the proof is insufficient to show this was the home, or residence, of appellant. It is shown, without dispute, he had resided there with his family at least two years. The witnesses said they had seen him there many times. This included a number of times when the officers theretofore had served search warrants upon him in searching the same premises; had seen him in bed in the house at night and in the daytime; had often seen his wife and child there; they knew of no one else who resided in that house; they knew the type and make of the two automobiles owned by appellant, and many times had seen these cars parked in the driveway and in the garage. And, lastly, the sheriff testified that appellant told him this was his house and he and his family resided there. There was no dispute of any of the foregoing testimony. However, as a second point on the question of control, appellant urges that the testimony demonstrates that three other persons might have had

control of the garage where the liquor was found. One of these was a member of the Negro race, whose name is not given. However, the testimony shows this man resided a block and a half away from the home of appellant. One witness said two hundred and fifty feet. The residence of this man had no connection whatever with the garage. No road or walkway connected the two. There is no suggestion that this Negro had any control over, or any rights whatever, connected with the garage. Another person who might possibly have placed the liquor in the hot water tank, appellant urges, was the occupant of the premises adjoining and just south of the home of appellant. That lot, as we understand, had as its north boundary, extending east and west, the rock wall we have mentioned. The residence of this party was some thirty feet south of that of appellant. That is the physical situation. However, it is not intimated that this man had any rights connected with the garage or the hot water tank therein. Of course, it is possible that by careful watch, catching appellant and his family away from home, or even when some, or all, of the members of the family were in the house, for this adjoining owner to have placed the fourteen pints of whiskey in the hot water tank, but that possibility, we think, is too far-fetched as a practical rule of law. It is further urged, on the point of possession, that there was an apartment above the garage and the occupants thereof might have placed the whiskey in the tank. Some of the witnesses said they did not know whether such an apartment existed or not. One said he understood there was such an apartment but he did not know whether it was occupied. In fact, assuming as a fact that there was such an apartment, there is no proof whatever in this record it was occupied by anyone at the time the officers found the whiskey.

On this point, appellant invokes Sellers v. City of Picayune, 202 Miss. 741, 32 So. (2d) 450. There are vital

distinctions between that case and this. In the Sellers case, the whiskey was in a cafe, a public place. It was shown the public constantly passed into and out of this cafe. It was further shown that the various employees of the cafe had access to the whiskey, and that these employees did, as a matter of fact, use, day and night, for deposit of their personal belongings, the cabinet in which the officer found the liquor. In the case at bar, we have a private residence, no person other than accused having any right to use the receptacle where the liquor was deposited, but, to the contrary, that defendant did have the exclusive possession and control thereof.

The cases on the sufficiency, or insufficiency, of the possession and control of defendants of the premises where whiskey is found, to sustain, or not sustain, convictions appear in 9 Mississippi Digest, Intoxicating Liquors, 236 (1 to 5). They are too numerous to cite in this opinion. We think ■■ the evidence in this case, tested by the rules laid down in those cases, amply justifies the finding of the jury that appellant had control and possession of the whiskey found in the water tank, and that he is liable for such possession.

■■ Appellant says, in the second place, the search warrant was insufficient to justify the search, and, therefore, no proof of the finding of whiskey on the premises was competent. The warrant was returnable before "Grady Estes" without mention of his official position. Appellant urges that this omission rendered the warrant void. It would be sufficient answer to this contention to note that no objection was made to the search warrant when it was offered in evidence. However, appellant did request a peremptory instruction, and after trial made a motion in arrest of judgment, and we will treat the question as though appellant did make timely objection. Both the transcript of the record from the justice of the peace court, and the judgment of conviction of appellant in that court, embodied as a part of

such transcript, show that Estes was a justice of the peace. The official character of the officer may be shown by proof other than the affidavit or the search warrant. Mooney v. State, 160 Miss. 701, 135 So. 200.

The warrant was returnable instanter. It was dated October 18th, and served the next day. Appellant says that by reason of this delay in service, the process was functus officio. He cites Taylor v. State, 137 Miss. 217, 102 So. 267. However, in that case the warrant, by its express terms, was returnable the same day issued —not instanter. It was not served until four days after the return date therein named. The court held that when served the writ was functus officio. It is not necessary for us in this case to undertake to announce a theoretical definition of instanter, as applied to search warrants, for the reason that in Jordan v. State, 147 Miss. 24, 112 So. 590, the warrant was returnable instanter and was not served until the next day after its date, and this Court held that this was a legal service of the writ. The difference in the facts of the two cases do not call for a different rule in the case at bar.

Lastly, it is urged we should either reverse and remand the case for proper sentence or reduce the same here. The contention is grounded in these circumstances: Sec. 2613 (b), the second conviction statute, authorizes imposition of a fine of not less than one hundred dollars, without stating any maximum fine, and imprisonment in the county jail of not less than sixty days nor more than six months. The sentence of appellant was to pay a fine of $1,000 and serve six months in jail, but the trial judge suspended $500 of the fine and four months of the jail service ". . . until further ordered by the court or judge in vacation to serve said four months in jail and pay said $500 fine." It is seen that no maximum fine is specified in said code section. Apparently this was a clerical omission, since the former statutes did fix such maximum. Laws 1912, Ch. 214, Sec. 1 (b); Hem-

ingway's Code 1917, Sec. 2086 (b). The statute in that respect is incomplete and brings into effect Sec. 2562, Miss. Code 1942, fixing a maximum fine of $500 for misdemeanors where no other statutes prescribe a penalty. Sec. 2562 supplements Sec. 2613 (b). State v. Kight, 106 Minn. 371, 119 N.W. 56; State v. Mulkey, 6 Idaho 617, 59 P. 17; State v. Britton, 144 La. 121, 80 So. 221. Where the penalty imposed by the court exceeds the maximum penalty permitted by statute, and it is clear the court intended to impose the maximum penalty, we have here reduced the penalty to the maximum and affirmed the case. Little v. State Miss. 8 So. (2d) 464. ██ But, in this case the trial judge imposed a maximum fine of $1,000 and appellant is legally liable to pay a fine greater than the statutes permit if the court should see fit in the future to so order. In addition to this, it is a wise policy for the trial judge to impose sentences rather than for this Court to do that. In imposing sentence, the trial judge properly takes into consideration many elements affecting the welfare of the defendant and the public. He is in much better position than is this Court to do justice under existing circumstances, and the statutes recognize that by often giving him much latitude and discretion in such matters. Therefore, we deem it best in this case to remand it for imposition of sentence by the trial court.

Affirmed upon the merits; reversed and remanded for sentence.